**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1888-24

IN THE MATTER OF
COMPLAINT INVESTIGATION
REPORT #C2025-7096
(HARRISON TOWNSHIP).

_____

Submitted May 28, 2026 – Decided July 10, 2026

Before Judges Vanek and Jacobs.

On appeal from the New Jersey Commissioner of Education, Docket No. C2025-7096.

Gorman, D'Anella, and Morlok, attorneys for appellant Board of Education of Harrison Township[1] (Brett E.J. Gorman and Sara Kulp, on the briefs).

Jennifer Davenport, Attorney General, attorney for respondent New Jersey Department of Education, Office of Special Education (Christopher Weber, Assistant Attorney General, of counsel; Vijayasri G. Aryama, Deputy Attorney General, on the brief).

PER CURIAM

---

[1] We refer to appellant as the Harrison Township School District, as set forth in its notice of appeal.

The Harrison Township School District (District) appeals from the January 28, 2025 final administrative decision (FAD) of the New Jersey Department of Education, Office of Special Education (Department), finding the District improperly required the parents of G.D.,[2] a preschool student eligible for special education and related services under the Individuals with Disabilities Education Act (Act), 20 U.S.C. §§ 1400-1482, to execute a waiver extending the timeline for reevaluation and an Individualized Education Program (IEP) team meeting. The District further appeals from the Department's January 28, 2025 order denying its motion for reconsideration. We affirm.

I.

On October 9, 2024, G.D.'s parents requested that the District conduct psychological, functional behavioral, and physical therapy reassessments of G.D. because of concerns regarding "increased behaviors" and "weak core stability." Following discussions with G.D.'s parents, the District agreed to conduct certain reassessments. On October 22, 2024, the District received parental consent to proceed.

Later, the parties disagreed on the timeline governing the reevaluation process. The District maintained that N.J.A.C. 6A:14-3.8(e) mandated both

---

[2] We use initials in the interest of G.D.'s privacy.

completion of the reassessments and convening of the IEP meeting within sixty days of the District receiving parental consent. The parents and their advocate disagreed, maintaining the District had sixty days to complete the reevaluation and that the IEP meeting could be held thereafter.

The District proposed an IEP meeting with G.D.'s parents for December 18, 2024. After G.D.'s parents stated they would be unavailable to meet on that date, the District advised another date would be selected but the meeting needed to occur within sixty days of its receipt of parental consent unless the parents agreed to extend the deadline. During a series of email exchanges throughout November 2024, the parties continued to dispute the timeline for the reevaluation process.

On November 17, 2024, G.D.'s parents signed the District-requested waiver, noting it was executed "under duress," but the District declined to accept it. On November 22, 2024, the parents filed a complaint with the Department.[3] The parents executed another waiver on November 25, 2024, without any additional notation or limiting language.

---

[3] This complaint is not in the parties' appendices.

A-1888-24

The District provided its reevaluation reports to G.D.'s parents on December 6, 2024. The parties then agreed to conduct the IEP meeting on January 8, 2025.

On January 16, 2025, the Department issued a Complaint Investigation Report (Report). The Department concluded N.J.A.C. 6A:14-3.8(e) requires completion of the reevaluation within sixty days of parental consent but does not require the IEP meetings to also occur within that period. It further found the regulations did not authorize the District to obtain a waiver from a student's parents extending the reevaluation timeline. The Department determined it was improper for the District to have insisted on the parents' waiver as a condition of scheduling the meeting after expiration of the sixty-day reevaluation period. The Department issued a "corrective action plan" directing that within one year the District must hold a meeting to "review the reevaluation timelines" and to "advise staff that N.J.A.C. 6A:14 does not allow for a waiver to extend regulatory timelines."

The District sought reconsideration, arguing the Department's interpretation conflicted with the Act, decisional law, and training materials used within the special education community. The Department declined to modify its decision.

4                                                                          A-1888-24

On appeal, the District argues the Department improperly concluded the sixty-day period set forth in N.J.A.C. 6A:14-3.8(e) applies only to completion of the reassessments and does not include the IEP meetings contemplated under N.J.A.C. 6A:14-3.8(f). The District further contends the Department's interpretation is inconsistent with the Act, including its broader regulatory scheme and the cooperative process the Act is intended to foster. The District disagrees, relying on the rationale set forth in its Report.

## II.

## A.

Our review of an administrative agency's final decision is limited. Parsells v. Bd. of Educ. of Somerville, 254 N.J. 152, 162 (2023). When reviewing an agency decision, we examine: (1) whether the agency action violated "express or implied legislative policies"; (2) whether there is substantial evidence in the record to support the agency's decision; and (3) whether in applying the law to the facts, the agency reached a conclusion "that could not reasonably have been made on a showing of the relevant factors." Allstars Auto Grp. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018).

Where an agency's decision satisfies these criteria, we accord substantial deference to its fact-finding and legal conclusions, recognizing "the agency's

'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)). We do not "substitute [our] own judgment for the agency's." Ibid. (quoting In re Carter, 191 N.J. 474, 483 (2007)). That said, "[w]hile we must defer to the agency's expertise, we need not surrender to it." N.J. Chapter of Nat'l. Ass'n of Indus. and Off. Parks v. N.J. Dep't of Env't Prot., 241 N.J. Super. 145, 165 (App. Div. 1990).

The party challenging the final administrative action has the burden to demonstrate grounds for reversal. Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

B.

To provide context to the parties' dispute, we briefly outline the applicable statute and regulations. The Act was enacted by Congress "to ensure that all children with disabilities have available to them a free appropriate public education." 20 U.S.C. § 1400(d)(1)(A). The Act provides federal funding to state and local agencies to assist in the education of disabled children. Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 295. To receive federal funding, the Act requires participating states to comply with the statute's

6

substantive and procedural requirements. H.E. v. Walter D. Palmer Leadership Learning Partners Charter Sch., 873 F.3d 406, 408 (3d Cir. 2017).

Before a child may receive special education and related services, the child must be evaluated to determine their eligibility. See 20 U.S.C. §§ 1414(a)-(b). Once eligibility is established, an IEP is developed collaboratively by the IEP team, which includes the child's parents, teachers, and local school officials. 20 U.S.C. §§ 1401(14), 1414(d)(1), 1412(a)(4). The IEP includes specific statements of a student's present abilities, goals for improvement, services curated to meet those goals, and a timeframe for reaching them. 20 U.S.C. § 1414(1)(A)(i). The Act further requires periodic reevaluation of eligible students to determine whether they continue to have a disability and whether their educational needs have changed. 20 U.S.C. § 1414(a)(2); 34 C.F.R. § 300.303.

As a participating state, New Jersey has enacted a statutory scheme, N.J.S.A. 18A:46-1 to -54, and accompanying regulations, N.J.A.C. 6A:14-1.1 to -10.2, to fulfill the Act's requirements. If a child is evaluated and determined to be eligible for special education and related services, N.J.A.C. 6A:14-3.1, he or she is entitled to all the substantive and procedural guarantees of the Act See 20 U.S.C. § 1412(a)(1)(A).

A-1888-24

Within thirty days of an eligibility determination, an IEP team must be develop a plan for the child. N.J.A.C. 6A:14-3.7(a). The IEP is reviewed at least annually, and the child's eligibility for special education is reevaluated at least once every three years. See 20 U.S.C. §§ 1414(a)(2)(B), 1414(d)(4)(A)(i); N.J.A.C. 6A:14-3.7 to -3.8(a). A reevaluation shall be conducted earlier if circumstances warrant or upon request of the student's parent or teacher. N.J.A.C. 6A:14-3.8(a).

As part of the reevaluation process, the student's IEP team determines whether additional assessments are necessary, and, if so, arranges for those assessments to be completed after receipt of parental consent. N.J.A.C. 6A:14-3.8(b)-(c). The regulations provide that "[a]ll requirements of this section for performing a reevaluation shall be completed within [sixty] days of the date the parent provides consent for the assessments to be conducted as part of the reevaluation." N.J.A.C. 6A:14-3.8(e).

The regulations further provide that "[w]hen a reevaluation is completed," the student's IEP team shall meet to determine whether the student continues to have a disability and, if so, to review and revise the student's IEP. N.J.A.C. 6A:14-3.8(f). The dispute in this appeal concerns whether the IEP meeting

described in N.J.A.C. 6A:14-3.8(f) must be conducted within the sixty-day reevaluation period referenced in N.J.A.C. 6A:14-3.8(e).

## C.

We begin with an analysis of the plain regulatory language. In re Eastwick Coll. LPN-to RN Bridge Program, 225 N.J. 533, 542 (2016). Our Supreme Court has described appellate review of an agency's regulatory interpretation as follows:

> To apply the "plainly unreasonable" standard, we first consider the words of the statute, affording to those words "their ordinary and commonsense meaning." In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 263 (2010 (quoting State v. Gelman, 195 N.J. 475, 482 (2008)). In that inquiry, "[w]e interpret a regulation in the same manner that we would interpret a statute." U.S. Bank, N.A. v. Hough, 210 N.J. 187, 199 (2012) (citing Bedford v. Riello, 195 N.J. 210, 221–22, 948 (2008)). The "paramount goal" is to determine the drafter's intent, and "[g]enerally, the drafter's intent is found in the actual language of the enactment." Ibid. We do not "rearrange the wording of the regulation, if it is otherwise unambiguous, or engage in conjecture that will subvert its plain meaning." Ibid.
>
> [In re Eastwick, 225 N.J. at 542 (citations reformatted).]

The plain language of N.J.A.C. 6A:14-3.8(e) and (f) supports the Department's interpretation that the timeline for the IEP meeting is not included

in the sixty-day reevaluation period. By its terms, subsection (f) applies only "[w]hen a reevaluation is completed." N.J.A.C. 6A:14-3.8(f). Thus, subsection (e) which refers to "[a]ll requirements of this section for performing a reevaluation," necessarily excludes those obligations that arise only after the reevaluation has been completed. N.J.A.C. 6A:14-3.8(e). The eligibility determination and IEP meeting cannot simultaneously be part of the reevaluation assessment as well as the steps that occur only after the reevaluation is complete.

The District's proffered interpretation that the term "reevaluation" encompasses the subsequent eligibility determination and the IEP meeting, at which the IEP is reviewed and revised as needed, is not supported by the regulatory language. The plain language of the regulation requires the IEP team "to determine whether the student continues to be a student with a disability," N.J.A.C. 6A:14-3.8(f)(1), and then to "review and revise the student's" then-existing IEP, N.J.A.C. 6A:14-3.8(f)(2), with both steps to occur only "when a reevaluation is completed." N.J.A.C. 6A:14-3.8(f).

To support its argument, the District focuses on the word "when" in subsection (f) but ignores the term "completed." If completion of the reevaluation is a precondition to holding the IEP meeting, "reevaluation" plainly

cannot encompass that step. Because only the "requirements . . . for performing a reevaluation" are subject to the sixty-day mandate, it follows that the eligibility determination and IEP-team meeting, which must occur after the reevaluation is completed, are not.

The Department's interpretation does not create the regulatory vacuum the District suggests. The District posits that, under the Department's reading, a school district could complete the reevaluation and then delay the eligibility and IEP-team meetings indefinitely. The District's argument overlooks that other regulations impose independent deadlines governing those stages of the process. For example, N.J.A.C. 6A:14-3.7(a) provides "[a] meeting to develop the IEP shall be held within [thirty] calendar days of a determination that a student is eligible for special education and related services." Thus, the Department's interpretation does not sanction the indefinite postponement of the eligibility determination and IEP meeting, as the District asserts.

We reject the District's contention that N.J.A.C. 6A:14-4.1(m) demonstrates New Jersey's implementing regulations generally treat evaluation and IEP development as a single, continuous obligation. However, N.J.A.C. 6A:14-4.1(m) addresses a materially different circumstance than the one here

11

because it only applies "[w]hen a student with a disability transfers from a nonpublic school with a services plan."

We are also unconvinced by the District's argument that the Department's interpretation is inconsistent with the broader statutory and regulatory framework because it artificially separates the Act's unified process and frustrates the impetus for collaboration between school districts and parents. The Act undoubtedly seeks to promote collaboration between parents and educational agencies. See, e.g., 20 U.S.C. § 1400(c)(5)(B) (recognizing the importance of "strengthening the role and responsibility of parents and ensuring that families of [eligible] children have meaningful opportunities to participate in the education of their children"). The Department's interpretation neither limits parental participation nor delays eligibility determinations. Moreover, the District fails to identify any way in which allowing a meeting after completion of the reevaluation conflicts with the Act's collaborative framework, especially given that separate regulations govern eligibility determinations and IEP team reviews.

We are unpersuaded by the District's argument that the Department's interpretation is inconsistent with the Act's goal of fostering cooperation between parents and school districts because it prohibits the use of waivers

A-1888-24

extending the regulatory timeline. The Department's regulations expressly identify those circumstances in which parental agreement may alter or waive procedural requirements. See, e.g., N.J.A.C. 6A:14-3.8(a)(1) (allowing, with parental consent, waiver of the reevaluation process altogether). N.J.A.C. 6A:14-3.8(e) does not contain a waiver provision. Thus, the Department properly rejected the District's argument that the regulation mandates all stages of the process to be completed within sixty days and that the District can require parents to execute a waiver if they wished to meet later.

In sum, the Department's interpretation implements the plain language of the regulation and imposes no burden on the District beyond compliance with the regulatory scheme as written. Because the Department's interpretation is consistent with the text and structure of N.J.A.C. 6A:14-3.8, we find no basis to disturb its determination. For the same reason, we reject the District's argument that the Department's interpretation amounted to improper rulemaking—the decision did not improperly establish a new rule but instead applied the plain language of N.J.A.C. 6A:14-3.8.

To the extent we have not addressed any of the parties' arguments, it is because they do not merit discussion in written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

13       A-1888-24